<u>**NOT YET SCHEDULED FOR ORAL ARGUMENT**</u>

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

**No. 24-1369**
_____

**BOUTIQUE AIR INC.,**

*Petitioner,*

v.

**UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.**

*Respondents.*

**ON PETITION FOR REVIEW OF ORDERS OF
THE UNTIED STATES DEPARTMENT OF TRANSPORTATION**
_____

**OPENING BRIEF OF PETITIONER BOUTIQUE AIR INC.**
_____

<div style="margin-left:45%">

M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone:  (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner Boutique Air Inc.

</div>

Dated: March 7, 2025

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Procedure 26.1(a) and 26.1 of the Federal Rules of the United States Court of Appeals for the District of Columbia Circuit, petitioner Boutique Air, Inc. ("Petitioner" or "Boutique") hereby discloses the following: Boutique Air is owned by Shawn Simpson, who is also the CEO of the company. No publicly traded entity owns 10 percent or more of the outstanding shares of Boutique Air Inc.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Rule 28(a)(1), Petitioner submits the following Certificate as to parties, Rulings and Related Cases:

**A.     Parties.**

The parties in this case are the Petitioner Boutique Air Inc. and Respondents Department of Transportation and Transportation Secretary Sean Duffy, in his official capacity.

**B.     Ruling under Review.**

The Ruling under review is the final order issued by the Respondent United States Department of Transportation, Office of the Secretary ("Respondent," "Department" or "DOT"), on November 21, 2024, titled "Order on Petition for

Reconsideration," Rec. 0321[1], JA __-___, which constituted a final order that rejected Boutique's responsive and lower-cost proposal to provide Essential Air Service ("EAS") under a four-year contract at McKellar-Sipes Regional Airport ("Airport") in Jackson, Tennessee ("Final EAS Decision"). DOT instead selected the significantly higher-priced competitor – Key Lime Air Corporation d/b/a Denver Air Connection. The Final EAS Decision affirmed an August 8, 2024, decision of the Respondent DOT to choose Denver Air Connection over Boutique "for the four-year term from December 1, 2024, through November 30, 2028" ("Order Selecting Air Carrier," Order 2024-8-4, Rec. 0313, JA __-__ (the "Initial EAS Decision").

### C.    Related Cases.

This case has not previously been before this Court, except that a prior case (No. 24-1314) was voluntarily withdrawn shortly after filing after the DOT issued its Final EAS Decision in this matter (denying Petitioner's petition for reconsideration).

---

[1]The Record references are to the last four digits of the Document ID "list" provided in the Respondents' Certified Index of Record, ECF 2095264 (Jan. 21, 2025). So, for example, the Final EAS Decision is listed in the Index as "DOT-OST-2000-7857-0321." Petitioner is using the last four digits for this document and the other agency record documents to avoid repeating each time the same preceding "DOT-OST-2000-7857-".

# TABLE OF CONTENTS

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ................................................i

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

GLOSSARY....................................................................................................... viii

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF ISSUES ...................................................................................2

STATEMENT REGARDING ADDENDUM .........................................................3

PRELIMINARY STATEMENT ...........................................................................3

STATEMENT OF THE CASE ..............................................................................3

SUMMARY OF ARGUMENT ...........................................................................12

STANDING OF PETITIONER ...........................................................................13

STANDARD OF REVIEW .................................................................................16

ARGUMENT ......................................................................................................17

I.    DOT IMPROPERLY FAILED TO SHOW HOW IT
      SATISFIED CONGRESS' REQUIREMENT THAT DOT
      "CONSIDER" THE SIGNIFICANT COST SAVINGS TO THE
      GOVERNMENT FROM SELECTING BOUTIQUE AIR TO
      PROVIDE EAS TO JACKSON RATHER THAN DENVER
      AIR CONNECTION. ...................................................................................17

II.   DOT'S DISREGARD OF THE HUGE COST DIFFERENTIAL
      IN THE COMPETING PROPOSALS ALSO WAS
      ARBITRARY AND CAPRICIOUS BECAUSE IT WAS THE
      OPPOSITE OF DOT'S REJECTION OF BOUTIQUE'S
      PROPOSALS FOR RUTLAND, VERMONT AND QUINCY,
      ILLINOIS AS TOO EXPENSIVE. ...............................................................20

III.    IN SELECTING DENVER AIR CONNECTION OVER
        BOUTIQUE AIR, DOT IGNORED THE SERIOUS RISK
        THAT THE LARGE SUBSIDIES CHARGED BY DENVER
        AIR CONNECTION WILL CAUSE JACKSON TO FORFEIT
        ITS  EAS  QUALIFICATION  BY  EXCEEDING  THE
        STATUTORY PER-PASSENGER SUBSIDY CAP OF $650.....................24

CONCLUSION ........................................................................................26

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS..........27

ADDENDUM ...............................................................................................ix

CERTIFICATE OF SERVICE ...................................................................xvi

# <u>TABLE OF AUTHORITIES</u>

(*Authorities principally relied upon)

**Cases**

*Am. Min. Cong. v. EPA*,
  907 F.2d 1179 (D.C. Cir. 1990)..........................................................23

*Bd. of County Commiss. of Wash. County v. DOT*,
  955 F.3d 96 (D.C. Cir. 2020)............................................................13

*\*BNP Paribas Energy Trading GP v. FERC*,
  743 F.3d 264 (D.C. Cir. 2014)......................................................22, 23

*Bowen v. Am. Hosp. Ass'n*,
  476 U.S. 610 (1986)........................................................................19

*\*Clark County, Nevada v. FAA*,
  522 F.3d 437 (D.C. Cir. 2008).........................................................18

*Comcast Corp. v. FCC*,
  526 F.3d 763 (D.C. Cir. 2008).........................................................23

*\*D&F Alonso Realty Trust v. Garvey*,
  216 F.3d 1191 (D.C. Cir. 2000).......................................................18

*Eco Tour Adventures, Inc. v. Jewell*,
  174 F.Supp.3d 319 (D.C.C. 2016)....................................................14

*FPL Energy Marcus Hook, L.P. v. FERC*,
  430 F.2d 441 (D.C. Cir. 2005).........................................................19

*Getty v. Federal Savings and Loan Ins. Corp.*,
  805 F.2d 1050 (D.D. Cir. 1986)........................................................16

*\*Gull Airborne Instruments, Inc. v. Weinberger*,
  694 F.2d 838 (D.C. Cir. 1982)..........................................................15

*\*Loper Bright Enters. v. Raimond, Sec'y of Commerce*,
  603 U.S. 369, 144 S. Ct. 2244 (2024)................................................16

*LTMC/Dragonfly, Inc. v. Metro. Washington Airports Auth.*,
   699 F.Supp.2d 281 (D.C.C. 2010) ........................................................14

*Mesa Air Group, Inc. v. DOT*,
   87 F.3d 498 (D.C. Cir. 1996) ............................................................4, 5

*Nat. Res. Def. Council v. Kempthorne*,
   525 F. Supp. 2d 115 (D.C.C. 2007) ....................................................18

*Nat'l Mar. Union of Am., AFL-CIO v. Commander, Military Sealift Command*,
   824 F.2d 1228 (D.C. Cir. 1987) ..........................................................14

*Nat'l Treasury Emps. Union v. Horner*,
   854 F.2d 490 (D.C. Cir. 1988) ............................................................19

*NextEra Desert Center Blythe, LLC v. FERC*,
   852 F.3d 1118 (D.C. Cir. 2017) ..........................................................19

*Philadelphia Gas Works v. FERC*,
   989 F.2d 1246 (D.C. Cir. 1993) ..........................................................19

*Public Citizen, Inc. v. FAA*,
   988 F.2d 186 (D.C. Cir. 1993) ............................................................18

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) ..............................................................................19

*Spirit Airlines, Inc. v. United States Department of Transportation et al.*,
   997 F.3d 1247 (D.C. Cir. 2021) ........................................................2, 4

*Tele-Sentry Sec., Inc. v. U.S. Dept. of Defense (Air Force)*,
   705 F. Supp. 629 (D.C.C. 1989) ........................................................19

*United States Sugar Corp.v. EPA*,
   113 4th 984, 991 ................................................................................16

**Statutes**

5 U.S.C. § 702 ...................................................................................14, 15

5 U.S.C. § 706(2) .....................................................................................12

*49 U.S.C. 41733(c)(1) .............................................................................16

49 U.S.C. § 40109(a) .................................................................................6

*49 U.S.C. §§ 41731-42 ............................................................................4

49 U.S.C. § 41731(a)(1)(C)(iii) .........................................................7, 8, 24

49 U.S.C. § 41732(a)(1) .............................................................................5

49 U.S.C. § 41733(c) ..................................................................................6

49 U.S.C § 41733(c)(1) .............................................................................17

*49 U.S.C. § 41733(c)(F) ..........................................................................11

49 U.S.C. § 41733(d) ..................................................................................5

49 U.S.C. § 46110 .....................................................................................12

49 U.S.C. § 46110(a) ...................................................................................2

49 U.S.C. § 401909(c)-(h) ...........................................................................6

*FAA REAUTHORIZATION ACT OF 2024, PL 118-63,
   May 16, 2024, 138 Stat 1215 (2024) ...........................................7, 8, 22

# GLOSSARY

| | |
|---|---|
| Airport | The McKellar-Sipes Regional Airport in Jackson, Tennessee |
| Denver Air Connection | Key Lime Air Corporation d/b/a Denver Air Connection |
| Department | U.S. Department of Transportation |
| DOT | U.S. Department of Transportation |
| EAS | Essential Air Service |
| Final EAS Decision | "Order on Petition for Reconsideration," DOT Order No. 2024-11-16 (Nov. 21, 2025), Rec. 0321 |
| Initial EAS Decision | "Order Selecting Air Carrier," DOT Order 2024-8-4 (Aug. 8, 2024), Rec. 0313 |
| MKL | McKellar-Sipes Regional Airport, Jackson, Tennessee |

## STATEMENT OF JURISDICTION

Pursuant to 49 U.S.C. § 46110(a), "a person disclosing a substantial interest in an order issued by the Secretary of Transportation" "may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit" within 60 days.[2]  On November 21, 2024, the Department issued its final order in this case: "Order on Petition for Reconsideration," DOT Order No. 2024-11-16, Rec. 0321, JA __-__ ("Final EAS Decision").  The Final EAS Decision affirmed the Department's August 8, 2024 "Order Selecting Air Carrier," Order 2024-8-4, Rec. 0313, JA __-__, which rejected the responsive and lower-cost bid from Boutique and instead awarded the four-year EAS contract for the McKellar-Sipes Regional Airport in Jackson, Tennessee to Plaintiff's competitor, Denver Air Connection.  On December 2, 2025, Petitioner timely filed a Petition for Review of the Final EAS Decision.

The Final EAS Decision is "final" and thus reviewable under 49 U.S.C. § 46110(a) because it "mark[s] the consummation of the agency's decisionmaking process" and "determine[s] rights or obligations."  *Spirit Airlines, Inc. v. United States Department of Transportation et al.*, 997 F.3d 1247, 1252 (D.C. Cir. 2021) (cleaned up).  Accordingly, the Court possesses jurisdiction over this appeal.

---

[2]Addendum, ADD. pp. vii-viii.

## STATEMENT OF ISSUES

1.      Whether the Final EAS Decision is contrary to statute, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, because the entity that Respondent DOT chose for the EAS award – Denver Air Connection – proposed to provide less frequent flights than Boutique Air and demanded a subsidy that is millions of dollars higher than any of Boutique Air's proposal options in only the first year, resulting in an irresponsible use of limited government resources, and ignoring the clear directive of Congress that mandated that the Department's EAS program reduce unnecessary spending.

2.      Whether the Final EAS Decision is contrary to statute, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because DOT has been inconsistent in considering total compensation or relative subsidy amounts requested for EAS airports, including different treatment in connection with (1) the 2019 selection of Hyannis Air Service, Inc. d/b/a Cape Air at Rutland, Vermont over the more expensive bid of Boutique Air that the community supported, and (2) the 2017 selection of Sky West at Quincy, Illinois over the competing bids of Boutique Air and Cape Air.

3.      Whether the Final EAS Decision is contrary to statute, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because the DOT failed to consider the fact that Boutique's proposal satisfied all of the

relevant criteria for selecting Boutique for the EAS award, and DOT's decision to instead select Denver Air Connection resulted in a subsidy amount that will cause Jackson to exceed the statutory per-passenger subsidy cap of $650 and thereby risk its EAS eligibility in the future.

<div align="center">

**STATEMENT REGARDING ADDENDUM**

</div>

Pertinent statutes have been reproduced in the Addendum.

<div align="center">

**PRELIMINARY STATEMENT**

</div>

On November 21, 2024, the Department issued the Final EAS Decision, which awarded a four-year Essential Air Services contract for the McKellar-Sipes Regional Airport in Jackson, Tennessee to Plaintiff's competitor, Denver Air Connection. The Final EAS Decision is contrary to statute, arbitrary and capricious, and abuse of discretion and otherwise in violation of applicable law because the DOT disregarded or failed to document its consideration of critical factors that Congress commanded DOT to consider fully in making EAS awards.

<div align="center">

**STATEMENT OF THE CASE**

</div>

**Boutique Air Inc.**

Headquartered in San Francisco, California, Boutique Air has been in operation since 2007. Boutique Air Proposal, dated January 17, 2024 but referred to by DOT as Feb. 1, 2024, Rec. 0307, at 1, JA __. It began by flying surveillance missions for the U.S. Forestry Service and the Bureau of Land Management, and evolved to provide air charter services across the West Coast with its fleet of Pilatus

<div align="center">3</div>

and Beechcraft aircraft.  *Id.*  In July 2012, Boutique applied for commuter operating authority from DOT and commenced flying scheduled passenger service between Los Angeles and Las Vegas in 2014.  Since then, it has developed effective marketing distribution channels with a reservation system that connects to all primary Global Distribution Systems, allowing travel agents access to all of its flights.  *Id.*  Boutique received its first EAS contact when DOT selected Boutique to provide service between Clovis, New Medico and Dallas/Ft. Worth, Texas. Boutique has continued its track record of success, providing reliable and high-quality air transportation to over 20 EAS communities.  *Id.*

Boutique operates a modern fleet of Pilatus PC-12 and Piaggio P180 Avanti aircraft with very comfortable 8- or 9- passenger seats, and ensures that its fleet is equipped with amenities beyond those found in typical commercial aircraft, and its pilots provide a level of customers service beyond that of normal commercial airlines.  *Id.*

### The EAS Program

Pursuant to deregulation of the civil aviation industry in 1978, Congress established the EAS program (49 U.S.C. §§ 41731-42) to create a system whereby the federal government, acting through the Department, subsidizes air transportation to and from airports in certain eligible communities.  *Mesa Air Grp., Inc. v. DOT*, 87 F.3d 498, 500 (D.C. Cir. 1996).  Congress wanted to make sure that subsidized

4

air service would be available to smaller communities that would otherwise have no service due to insufficient demand. *See id*. To facilitate such service, the statute authorizes the Secretary of Transportation to grant subsidies to private air carriers to compensate for this lack of demand. *See* 49 U.S.C. § 41733(d). "The justification for the subsidies is that they make it possible for the private air carrier recipients of the subsidies to provide service to certain communities that otherwise would have none because they are unable to generate a sufficient demand for the service to meet its cost." *Mesa Air*, 87 F.3d at 500. Basic "essential air service" includes "scheduled air transportation of passengers and cargo . . . to a medium or large hub airport less than 650 miles from an eligible place" that has convenient connecting or single-plane air service to a substantial number of destinations beyond that airport. 49 U.S.C. § 41732(a)(1).[3]

Before airline deregulation, the Government required air carriers to schedule and provide at least two daily round trips at each point on their certificates. During the pre-Airline Deregulation Act Congressional discussions, the prospect of allowing carriers to terminate scheduled air service without prior Government approval raised concern that communities with relatively lower traffic levels would lose service entirely as carriers shifted their operations to larger, potentially more lucrative markets. To address this concern, Congress added section 419 to the

---

[3]ADD. p. v.

Federal Aviation Act, which established the EAS program to ensure that smaller communities would retain a link to the National Air Transportation System, with Federal subsidy when necessary. Initially, the program was authorized for ten years. After multiple extensions of that period, the program is now permanently authorized by Congress.

The EAS statute, 49 U.S.C. § 41733(c), lists the specific factors that the Department is required to consider in deciding which air carrier to select for an EAS award. Prior to 2024, the five factors listed in Section 41733(c) were:

**(A)** the demonstrated reliability of the applicant in providing scheduled air service;

**(B)** the contractual, marketing, code-share, or interline arrangements the applicant has made with a larger air carrier serving the hub airport;

**(C)** the preferences of the actual and potential users of air transportation at the eligible place, including the views of the elected officials representing the users;

**(D)** whether the air carrier has included a plan in its proposal to market its services to the community; [and]

**(E)** for an eligible place in Alaska, the experience of the applicant in providing, in Alaska, scheduled air service, or significant patterns of non-scheduled air service under an exemption granted under section 40109(a) and (c)-(h) of this title.

**<u>The FAA Reauthorization Act of 2024</u>**

In 2024, Congress amended the EAS statute to add the following subsection (F) which DOT is required to consider:

**(F)**     **the total compensation proposed by the air carrier for providing scheduled air service under this section.**

FAA Reauthorization Act of 2024, Pub. L. No. 118-63, 138 Stat. 1215 (2024) (emphasis added).  In other words, DOT was mandated by Congress to evaluate competing offers based in part on how much money the selected air carrier would cost taxpayers.

## The Statutory Per-Passenger Subsidy Cap of $650

Pursuant to the EAS statute, if the community is "less than 175 miles from the nearest large or medium hub airport," the average subsidy per-passenger must be "less than $650 during the most recent fiscal year."  49 U.S.C. § 41731(a)(1)(C)(iii). Specifically, 49 U.S.C. § 41731(a)(1)(C)(iii) states that, in order to qualify as an "eligible place" for the EAS program, an airport must have an "average subsidy per passenger" "of less than $650 during the most recent fiscal year for locations that are less than 175 miles from the nearest large or medium hub airport."

## The Jackson, Tennessee Airport

Jackson, Tennessee is located between the larger cities of St. Louis, Missouri, and Atlanta, Georgia.  Rec. 0302, Appendix A, JA __.  As Petitioner informed DOT, Jackson is subject to the $650 subsidy cap because in Jackson is: (a) 87.4 miles from Memphis International Airport, a Medium Hub Airport; and (b) 135.6 miles from Nashville International Airport, a Large Hub Airport.  Rec. 0314, Page 3, JA __. DOT has recognized this fact:

> As amended by FAA 2024, 49 U.S.C. 41713(a)(1)(C)(iii) requires that EAS communities less than 175 miles from the nearest large or medium airport have an average subsidy per passenger, as determined by the Secretary, of less than $650. **Jackson is subject to this requirement, because it is not more than 175 miles from the nearest large- or medium-hub airport**.

Rec. 0313, at 5, JA __ (emphasis added).

In March 2021, DOT selected Boutique Air to serve Jackson for a two-year term, from June 1, 2021 through May 31, 2023.  Rec. 0321, at 2, JA __.  Because of pandemic conditions, Boutique was not able to provide service throughout the term and on December 10, 2021, it filed a termination notice with the Department.  *Id*. According to a news article dated November 30, 2021 which DOT chose to place into the record for this case, Boutique's problems at Jackson were caused by "the pandemic, worker shortages, and air travel restrictions."  Rec. 0319, at 1, JA __. These were clearly pandemic-era obstacles which have no relevance to a decision that DOT made for Jackson in August 2024.

In short, DOT's purported justification for barring Boutique from serving Jackson -- that "Boutique Air's determination to imminently cease operations did not comply with its statutory obligations and would have left Jackson without air transportation over the holidays" (Rec. 0321, at 2-3, JA __-__) has no relevance post-pandemic.  The pandemic conditions of late 2021 are, thankfully, not currently in place, and DOT should not judge any carrier based on the unprecedented financial and operational pressures during the middle of the pandemic.

**Boutique Air's Proposal to Provide EAS Service**

On or about November 17, 2023, DOT issued an Order Requesting Proposal for EAS at Jackson.  Rec. 0302, JA __-__.

In response, Boutique submitted its proposal to provide EAS at Jackson.  Rec. 0307, JA __-__.  In its proposal Boutique proposed a service consisting of 18 to 21 weekly round trips from Jackson to either Nashville, Atlanta, Atlanta/St. Louis, or Atlanta/Detroit.  *Id.*, at 2, JA __.  It also promised to "spend at least $20,000 per year in each market if it is selected for advertising & marketing to help ensure that air service for the community is a success."  *Id.*  Regarding performance, Boutique informed DOT that "Through the past 12 months, Boutique Air has maintained 99.65% controllable completion over nearly 6,000 scheduled flight operations."  *Id.*

DOT received competing proposals for Jackson from Denver Air Connection.  Rec. 0305, JA __-__, Contour Airlines, Rec. 0304, JA __-__, and Southern Airways Express LLC, Rec. 0306, JA __-__.  In contrast to the 8 and 9 seat aircraft proposed by Boutique, Denver Air Connection proposed utilizing 30-seat Dornier Jet and 50-seat Embraer EMB-145 aircraft.  Rec. 0305, at 1, JA __.

**The Department's Initial EAS Decision**

On August 8, 2024, the DOT issued its Initial EAS Decision, choosing Denver Air Connection for the Jackson, Tennessee contract rather than Boutique Air the four-year term from December 1, 2024, through November 30, 2028."  Rec. 0313,

JA __-___.  DOT selected Denver Air Connection "to provide Jackson with a total of 12 weekly nonstop round trips to [ATL], using 30-seat Dornier 328 and 50-seat Embraer EMB-145 Aircraft at an annual subsidy of $7,954,117 for year one, $8,510,905 for year two, $9,106,668 for year three, and $9,744,135, for year four," for a total of $35,315,825.  *Id.* at 3, JA __.

In choosing Denver Air Connection over Boutique Air, the DOT ignored Congress' directive to "consider . . . the total compensation" which the winning bidder would charge versus the losing bidder.

**<u>Boutique Air's Petition for Reconsideration and Supplemental Submission</u>**

On August 31, 2024, Boutique filed a Petition for Reconsideration of the Initial EAS Decision, Rec. 0314, JA __-__.  *See also* Rec. 0315, JA __-__.  In its Petition, Boutique attached a table that detailed the cost comparison of each of Boutique's proposal options versus Denver Air Connection's proposal.  The difference in cost to the government between Boutique's proposal and that of Denver Air Connection "ranged from $8,405,656 to $21,427,236 over four years."  Exhibit A, JA __.

|  | *Denver Air Connection's Subsidy Proposal* | *Boutique Air's Subsidy Proposals* | *Total Subsidy Differential between Denver Air Connection and Boutique* |
|---|---|---|---|
| Year 1 | $7,854,117 | $3,295,117 to $6,384,533 | $1,569,584 to $4,659,000 |

| Year 2 | $8,510,905 | $3,295,117 to $6,384,533 | $3,695,956 to $9,874,788 |
| Year 3 | $9,106,668 | $3,525,775 to $6,831,451 | $5,971,173 to $15,455,681 |
| Year 4 | $9,744,135 | $3,772,580 to $7,309,652 | $8,405,656 to $21,427,236 |
| **Total** | **$35,415,825** | **$13,888,589 to $26,910,169** | |

*Id.*

DOT's decision was not only irresponsibly financially, but it also was irresponsible to the environment. By selecting a service which uses a much larger aircraft powered by jet engines, the DOT in effect caused anywhere from 15,534 to 16,571 additional tons of $CO_2$ to be emitted over four years compared to any of the options proposed by Boutique Air. Exhibit B, JA __.

## **The DOT's Final EAS Decision**

On November 21, 2024, DOT issued its Final EAS Decision, which denied Boutique's Petition for Reconsideration. Rec. 0321, JA __-__. With regard to Boutique's argument that DOT failed to consider "the total compensation proposed by the air carrier for providing scheduled air service" (49 U.S.C. § 41733(c)(F)), DOT offered only the following conclusory statement:

> Boutique Air asserts the Department should have selected it because it "submitted a valid proposal to serve [Jackson] at a significantly lower subsidy than [Denver Air Connection's] proposal. While the Department is required to consider the total compensation proposed by the air carrier, the statute does not require the Department to select the least expensive air service proposal. The "total compensation proposed by the air carrier for providing scheduled air service under this section"

11

is only one of the five specified factors that the Department is required
to consider.

Rec. 0321, page 6, JA ___.  This was a "non-response" response.  It is not sufficient

for DOT to claim that it complied with its statutory mandate, but then refuse to

"show its work."

In refusing to consider the significant cheaper subsidies offered by Boutique,

DOT treated Boutique sharply different than recent examples at Rutland, Vermont

and Quincy, Illinois.

## SUMMARY OF ARGUMENT

In its Final EAS Decision, the Department rejected Boutique's responsive and

lower-cost proposal to provide EAS at Jackson and instead awarded an EAS contract

to Denver Air Connection for the four-year term from December 1, 2024, through

November 30, 2028.  The Final EAS Decision should be set aside pursuant to 49

U.S.C. § 46110 and 5 U.S.C. § 706(2) because it is arbitrary and capricious, not

supported by substantial evidence and in excess of statutory jurisdiction, authority,

or limitations, given that the DOT failed to demonstrate that it actually analyzed,

weighed and balanced all of the statutorily-mandated decisional factors.

The Department failed to consider a critical statutory factor of the relative cost

to the United States Treasury of selecting the significantly more expensive Denver

Air Connection over Boutique Air.  In 2024, Congress amended the EAS law to

make it crystal clear that the Department needs to "the total compensation proposed

12

by the air carrier . . . ."    Despite this, DOT has refused to show how it actually considered the millions of dollars in cost savings from selecting the Boutique Air proposal rather than the Denver Air Connection proposal.

The Department's disregard of the millions of dollars in cost differential was especially arbitrary and capricious because in prior EAS awards it has rejected Boutique Air's proposal precisely because it would have cost the government more than competing offerors.

Finally, in its decision to select the much higher priced Denver Air Connection proposal, DOT has created a very real risk that the amount of the subsidy is so high that it will render Jackson ineligible to continue in the EAS program.

## STANDING OF PETITIONER

As a party directly aggrieved by the Final EAS Decision, Boutique possesses the requisite standing to seek APA review of the Final EAS Decision in this Court. Boutique submitted a timely proposal to provide EAS to Jackson, Tennessee and DOT's rejection of Boutique's proposal caused Boutique to suffer economic harm because of the loss of the EAS subsidy revenue. *Cf. Bd. of County Commiss. of Wash. County v. DOT*, 955 F.3d 96, 97 n. 1 (D.C. Cir. 2020) ("the airport and its Washington County owners have Article III standing because if Southern Airways loses its subsidies, the airport will suffer significant economic loss").

As the D.C. Circuit has explained, a challenge to a federal contracting decision rests not merely on the lost economic gain the disappointed bidder would have received had it been awarded the contract, but stems instead from an "injury to [the bidder's] right to a legally valid procurement process. *Nat'l Mar. Union of Am., AFL-CIO v. Commander, Military Sealift Command*, 824 F.2d 1228, 1237 (D.C. Cir. 1987) (citing authorities). This right to fair consideration "is implicitly bestowed on all bidders by the mandatory language of the federal procurement statutes, and by the contractual invitation to bid embodied in the solicitation." *Id.* at 1237. Thus, under Article III, "'injury to a bidder's right to a fair procurement is obviously an injury both traceable to the alleged illegality in a procurement and redressable by any remedy that eliminates the alleged illegality.'" *LTMC/Dragonfly, Inc. v. Metro. Washington Airports Auth.*, 699 F.Supp.2d 281, 291 (D.C.C. 2010) (quoting *AFL-CIO*, 824 F.2d at 1237-38 ("reference to the bidder's distinctive legal right [to fair consideration] is essential to article III standing in a procurement challenge.")). Here, Boutique's rights to a fair and legally valid procurement process is not merely economic but stems from the right to a fair consideration under the procurement statutes and regulations. *See Eco Tour Adventures, Inc. v. Jewell*, 174 F.Supp.3d 319, 329 (D.C.C. 2016).

As a disappointed bidder for the Jackson EAS award, Boutique Air has standing under APA Section 702 to challenge the DOT award as contrary to statute

and otherwise arbitrary and capricious. *See, e.g., Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 841 (D.C. Cir. 1982) (Gull contends that it has standing under § 702 as a disappointed bidder on the Navy's contract to protest both its award to CAS and its subsequent maladministration. We agree with both Gull and the district court that disappointed bidders have standing to challenge the failure of an administering agency to follow the applicable statutes and regulations regarding contract awards."). To establish standing, the bidder must show that their bid was within the "zone of active consideration" by the agency, meaning that but for the alleged illegality, the bidder would have had a substantial chance of being awarded the contract. *See Eco Tour Adventures*, 174 F.Supp.3d at 329-332; *see also Free Air Cop. V. FCC*, 130 F.3d 447, 450 (D.C. Cir. 1997) ("In other words, sufficiently viable runner-ups in a procurement process have standing to allege that an illegality in the process caused the contract to go to someone else and not to them."). This includes demonstrating that the bidder's proposal was not rejected for reasons such as being non-responsive or failing to meet the solicitation requirement. *See Ralvin Pacific Properties, Inc., v. U.S.*, 871 F.Supp. 468, 473-74 (1994).

Clearly, Boutique Air was well within the "zone of active consideration" for the EAS contract. The Final EAS Decision contains no indication that Boutique's proposal was in any manner non-responsive. To the contrary, it indicates that Boutique's proposal for the disputed contract was determined by DOT to be part of

15

the best proposals submitted. DOT actively considered Boutique's proposal, and Boutique had a substantial chance of being awarded the contract but for the DOT's arbitrary and capricious decisionmaking.   Final EAS Decision, at 3, 6, JA ___, ___. Therefore, Boutique was a sufficiently viable "runner-up" in the procurement process sufficient to give rise to standing.

## STANDARD OF REVIEW

In reviewing how an agency interpreted and applied a statute, such as 49 U.S.C. 41733(c)(1), the Court conducts a *de novo* review.  *United States Sugar Corp. v. EPA*, 113 F.4th 984, 991 n. 7 (D.C. Cir. 2024) ("*Loper Bright* held that the Administrative Procedure Act requires courts to construe statutes *de novo*, without deference to the views of agencies entrusted to administer the statutes") (citing *Loper Bright Enters. v. Raimond, Sec'y of Com.*, 603 U.S. 369, 144 S. Ct. 2244, 2261 & n. 4 (2024).

"When a statute requires agencies to 'consider' particular factors, it imposes upon agencies duties that are essentially procedural.  The only role for a court is to ensure that the agency has considered the factor."  *Getty v. Federal Savings and Loan Ins. Corp.*, 805 F.2d 1050, 1055 (D.D. Cir. 1986) (cleaned up).  "Stating that a factor was considered, however, is not a substitute for considering it."  *Id*.  The Court "must make a 'searching and careful' inquiry to determine if [the agency] actually *did* consider it."  *Id*. (cleaned up) (emphasis in original).

## **ARGUMENT**

**I.    DOT IMPROPERLY FAILED TO SHOW HOW IT SATISFIED CONGRESS' REQUIREMENT THAT DOT "CONSIDER" THE SIGNIFICANT COST SAVINGS TO THE GOVERNMENT FROM SELECTING BOUTIQUE AIR TO PROVIDE EAS TO JACKSON RATHER THAN DENVER AIR CONNECTION.**

The Final DOT Decision is contrary to statute, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, because the entity that Respondent DOT chose for the EAS award – Denver Air Connection – proposed to provide less frequent flights than Boutique Air and demanded a subsidy that is millions of dollars higher than any of Boutique Air's proposal options in only the first year, resulting in an irresponsible use of limited government resources, and ignoring the clear directive of Congress that mandated that the Department's EAS program reduce unnecessary spending.  DOT failed to explain how it weighed and balanced the five relevant factors set forth in 49 U.S.C § 41733(c)(1), including the requirement that it consider "the total compensation proposed by the air carrier . . . ."

In its Petition for Reconsideration, Boutique demonstrated that its proposals would save the government "from $8,405,656 to $21,427,236 over four years."  Rec. 0314, page 4, and Exhibit 1, JA __-JA __.  In its Final Order, the Department dismissed this evidence without providing any non-conclusory response.  Rec. 0321, at 6, JA __.  DOT's statement that "The 'total compensation proposed by the air

17

carrier for providing scheduled air service under this section' is only one of the five specified favors that the Department is required to consider.," and "multiple other statutory factors favor DAC's proposal over Boutique Air's proposal" (*id*.) is far too conclusory. It offers nothing of substance.

Agencies do not satisfy the APA by rendering important decisions and then refusing to explain how it reached the result. *See, e.g., D&F Afonso Realty Trust v. Garvey*, 216 F.3d 1191, 1196-97 (D.C. Cir. 2000) (FAA decision that house roof was a navigational hazard with respect to a nearby airport was arbitrary and capricious because the agency failed to adequately explain its decision: "In essence, the FAA adopted an *ipse dixit* approach to making a hazard determination: the house creates a navigational hazard because the agency says so. Even our highly deferential standard of review requires more than the FAA offers."); *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (the "requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result"); *Clark County, Nevada v. FAA*, 522 F.3d 437, 441-42 (D.C. Cir. 2008) ("FAA's failure to further explain its conclusions here is problematic here"). "At a minimum, the agency must have weighed the relevant data and articulated an explanation that establishes a 'rational connection between the facts found and the choice made.'" *Nat. Res. Def. Council v. Kempthorne*, 525 F. Supp. 2d 115, 120

(D.C.C. 2007) (quoting *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626, 106 S.Ct. 2101 (1986)).

DOT's failure to provide an intelligible explanation for its disregard of the dramatic cost savings from the Boutique Air proposal "amounts to a failure to engage in reasoned decisionmaking." *NextEra Desert Center Blythe, LLC v. FERC*, 852 F.3d 1118, 1123 (D.C. Cir. 2017) (citing *FPL Energy Marcus Hook, L.P. v. FERC*, 430 F.2d 441, 448 (D.C. Cir. 2005).

"[R]eviewing courts may affirm [an agency order] based only on reasoning set forth by the agency itself." *Philadelphia Gas Works v. FERC*, 989 F.2d 1246, 1250 (D.C. Cir. 1993) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). "[T]he reviewing court must be satisfied that the 'agency's decisionmaking was "reasoned,"' and that 'it considered the relevant factors and explained the facts and policy concerns on which it relied, and whether those facts have some basis in the record.'" *Tele-Sentry Sec., Inc. v. U.S. Dept. of Defense (Air Force)*, 705 F. Supp. 629, 631-32 (D.C.C. 1989) (*quoting Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 498 (D.C. Cir. 1988)). Where, as here, the agency has opted not to provide the actual reasons for its determination that the excessive cost of the Denver Air Connection proposal compared to that of Boutique Air was not important for the EAS decision, the Court is not in a position to affirm the DOT's Final EAS Decision.

Because DOT failed to adequately explain why the millions of dollars in cost differential was not sufficient to award the Jackson EAS contract to Boutique, its decision is arbitrary and capricious and must be set aside. *Philadelphia Gas Works*, 989 F.2d at 1250 ("The agency has . . . not fully complied . . . when the agency gives an inadequate explanation for its conclusions.") (citing *Algonquin Gas Transmission Co. v. FERC*, 948 F.2d 1305, 1315-16 (D.C. Cir. 1991)).

Finally, DOT's criticism of Boutique Air because of what happened during the middle of the COVID-19 pandemic (Rec. 0321, at 2-3, JA __ - __) is not fairly applied to Boutique years after the unprecedented financial and operational pressures during the middle of the pandemic have abated.

## II.  DOT'S DISREGARD OF THE HUGE COST DIFFERENTIAL IN THE COMPETING PROPOSALS ALSO WAS ARBITRARY AND CAPRICIOUS BECAUSE IT WAS THE OPPOSITE OF DOT'S REJECTION OF BOUTIQUE'S PROPOSALS FOR RUTLAND, VERMONT AND QUINCY, ILLINOIS AS TOO EXPENSIVE.

The Final DOT Decision also is contrary to statute, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because DOT's refusal to credit the significantly lower cost that would have occurred had Boutique received the EAS contract is completely at odds with how DOT treated Boutique in other EAS awards.  This occurred in connection with: (1) the 2019 selection of Hyannis Air Service, Inc. d/b/a Cape Air at Rutland, Vermont over the more expensive bid

of Boutique Air that the local community supported, and (2) the 2017 selection of Sky West at Quincy, Illinois over the competing bids of Boutique Air and Cape Air.

With regard to Rutland, DOT in 2019 selected a bid that was lower than that offered by Boutique Air, against the wishes of the community. Rec. 0314, at 2, JA __. DOT sought to justify rejection of Boutique's proposal because the winning bidder proposed terms that would save $576,254 over a two-year term. *Id*. This was a critical issue for DOT despite the fact that in 2019, cost was not one of the criteria listed in the EAS statute. Rather, as set forth above, DOT was not mandated by Congress to consider the cost of the competing proposals until Congress changed the law in 2024.

With respect to Quincy in 2017, after the Mayor of Quincy and the municipal EAS selection committee decided to officially recommend Boutique Air, Quincy and its Mayor told Boutique that the DOT had pressured the Mayor to rescind Quincy's decision to recommend Boutique Air and to instead select SkyWest Airlines. Rec. 0314, at 2, JA __. Despite Quincy's recommendation that Boutique Air receive the EAS award, following pressure from DOT Quincy did in fact rescind its recommendation for Boutique, and instead recommended SkyWest. *Id*. DOT then awarded the contract to SkyWest, citing the excessive cost of the Boutique Air proposal. *Id*. The extra cost for selecting Boutique would have been $344,480. *Id*. Similar to what happened at Rutland, the difference is negligible compared to the

21

millions DOT is wasting in Jackson.  Again, this decision to discriminate against Boutique at Qunicy was made during a time when cost was not explicitly one of the five statutory selection criteria as it is now for Jackson under the 2024 FAA Reauthorization Act.

In rejecting Boutique's argument that such discriminatory and inconsistent treatment was improper, the Department asserted:

1. Regarding Rutland: "While the community supported Boutique Air's higher-cost proposal, the Department determined that it could not 'justify such an increase in spending when Cape Air has served Rutland reliably for almost 12 years.'"  Pages 6-7, JA __-__.

2. Regarding Quincy: "In the Jackson case, the Department considered the statutory factors in the context of the circumstances as a whole and found that [Denver Air Connection's] superior reliability in providing EAS, its interline arrangements with three larger air carriers, and in being the community's preferred choice."   Page 7, JA __.

Once again, the Department offers nothing more than non-responses responses.  DOT acknowledges that Boutique was denied the Rutland EAS contract because Cape Air offered a lower cost, but fails to offer any explanation as to why the same result did not occur at Jackson, given the significantly lower costs proposed by Boutique.  It is arbitrary and capricious for the Department to treat Boutique in such an inconsistent and discriminatory manner, especially without providing any substantiation for such unequal treatment.

In *BNP Paribas Energy Trading GP v. FERC*, 743 F.3d 264 (D.C. Cir. 2014), the Court held that FERC acted arbitrarily and capriciously by failing to provide an

adequate explanation for treating similarly situated parties differently. The Court

stated:

> The failings of the Commission's approach here are underscored by its non-response to a specific point that Paribas raised in the administrative proceedings. There it argued that the Commission's decision was inconsistent with its application of cost causation to an analogous case in the electricity sector, namely when integration of a new electricity generator requires upgrades to the transmission network. Paribas says that in that case the Commission does not permit transmission operators to mechanically assign the cost of the upgrade to the generator that precipitated the expense, but instead requires consideration of the benefits to all parties on the integrated system. . . .
>
> Yet when Paribas pointed out the apparent inconsistency between FERC's action here and its management of the electricity sector, the Commission brushed it off as "not relevant to this case." . . . **Such an opaque dismissal of an analogy falls well short of the APA's requirement that the Commission "provide an adequate explanation to justify treating similarly situated parties differently,"** *Comcast Corp. v. FCC,* 526 F.3d 763, 769 (D.C. Cir. 2008); accord *Am. Min. Cong. v. EPA,* 907 F.2d 1179, 1191 (D.C. Cir. 1990).

*Id*. at 338 (emphasis added)

Similarly here, when Boutique Air pointed out the inconsistency in DOT's

treatment of Boutique Air in the Rutland and Quincy examples compared to Denver

Air Connection's much higher priced proposal for Jackson, the DOT "brushed it off"

as not relevant to this case. As in *Paribas*, such an "opaque dismissal of an analogy

falls well short of the APA's requirement that the Commission 'provide an adequate

explanation to justify treating similarly situated parties differently.'" *Id.*

23

**III.  IN SELECTING DENVER AIR CONNECTION OVER BOUTIQUE AIR, DOT IGNORED THE SERIOUS RISK THAT THE LARGE SUBSIDIES CHARGED BY DENVER AIR CONNECTION WILL CAUSE JACKSON TO FORFEIT ITS EAS QUALIFICATION BY EXCEEDING THE STATUTORY PER-PASSENGER SUBSIDY CAP OF $650.**

The Final DOT Decision also is contrary to statute, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because the DOT's award of the four-year EAS contact to Denver Air Connection will result in a subsidy amount that will cause Jackson to exceed the statutory per-passenger subsidy cap of $650. As set forth above, Jackson is subject to the $650 per person subsidy cap because Jackson is 87.4 miles from Memphis International Airport, a Medium Hub Airport, and 135.6 miles from Nashville International Airport, a Large Hub Airport. 49 U.S.C. § 41731(a)(1)(C)(iii).  The DOT concedes this fact in its Final EAS Decision, Rec. 0321, at 5, JA __ ("**Jackson is subject to this requirement, because it is not more than 175 miles from the nearest large- or medium-hub airport**.") (emphasis added).

In its Petition for Reconsideration, Boutique told DOT that "In the last full Fiscal Year for which passenger traffic data is available, FY2023, Jackson saw a total of 6,680 passengers enplane or deplane at McKellar-Spies Regional Airport," and that "If Denver Air Connection's subsidy had been awarded to transport this many passengers, it would amount to $1,190.74 per passenger, which is nearly

double the statutory limit and would result in permanent removal from the EAS Program for Jackson, Tennessee.  Rec. 0314, at 3, JA __.

Not only was it improper for DOT to award such an expensive bid to a community with this passenger traffic, but it also was irresponsible to accept a bid that will adversely affect Jackson's eligibility for EAS in perpetuity.  There were simply better options available that are better for the community with more connection opportunities and better flight schedules that do not threaten Jackson's eligibility to remain a part of the EAS Program.  Rec. 0314, at 3-4, JA __-__.

The Department's response to this argument was, once again, a non-response:

In Order 24-8-4, the Department stated that it expects [Denver Air Connection] and the Jackson community to work together to ensure that the community will comply with the applicable eligibility requirements.  As Jackson works to rebuild its air transportation, access to reliable air service may be its best medicine, especially with respect to rebuilding trust in air transportation in the community and increasing enplanements.

Rec. 0321, Page 7, JA __.

This was clearly arbitrary and capricious on the part of the Department.   In response to a clear showing that selection of the Denver Air Connection proposal will cause Jackson to lose its EAS eligibility, all that the Department could say is that "expects [Denver Air Connection] and the Jackson community to work together to ensure that the community will comply with the applicable eligibility

requirements."  Such wishful thinking falls far short of what is required under the APA.

## **CONCLUSION**

For the reasons set forth above, Petitioner Boutique Air requests that the Court set aside and vacate the Final EAS Decision to award the 2024 EAS Contract to Denver Air Connection rather than Boutique Air Service and to grant such other relief to which Boutique is entitled.

Petitioner requests oral argument.

Respectfully submitted,

*/s/ M. Roy Goldberg*
M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone:  (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner Boutique Air Inc.

Dated: March 7, 2025

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.     This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,985 words, excluding accompanying documents exempted by Fed. R. App. P. 32(f).

2.     This Brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using the Word processing program (Microsoft 365) in 14-point font and Times New Roman type style.

Respectfully submitted,

*/s/ M. Roy Goldberg*
M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone:  (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner Boutique Air Inc.

Dated: March 7, 2025

# ADDENDUM

# STATUTES

## 5 U.S.C. § 702:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

## 5 U.S.C. § 706:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1)    compel agency action unlawfully withheld or unreasonably delayed; and

(2)    hold unlawful and set aside agency action, findings, and conclusions found to be--

(A)    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)    contrary to constitutional right, power, privilege, or immunity;

(C)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D)    without observance of procedure required by law;

(E)    unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F)    unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## 49 U.S.C. § 41731:

(A)    GENERAL.—In this subchapter—

(1)    "eligible place" means a place in the United States that —

(A)(i)(I) was an eligible point under section 419 of the Federal Aviation Act of 1958 before October 1, 1988

(II)    received scheduled air transportation at any time after January 1, 1990; and

(III)    is not listed in Department of Transportation Orders 89–9–37 and 89–12–52 as a place ineligible for compensation under this subchapter; or

(ii)    was determined, on or after October 1, 1988, and before the date of the enactment of the FAA Extension, Safety, and Security Act of 2016 (Public Law 114–190), under this subchapter by the Secretary of Transportation to be eligible to receive subsidized small community air service under section 41736(a);

(B)    had an average of 10 enplanements per service day or more, as determined by the Secretary, during the most recent fiscal year beginning after September 30, 2012;

x

(C)    had an average subsidy per passenger of less than $1,000 during the most recent fiscal year, as determined by the Secretary—

(i)    of less than $1,000 during the most recent fiscal year beginning before October 1, 2026, regardless of driving miles to the nearest large or medium hub airport;

(ii)    of less than $850 during the most recent fiscal year beginning after September 30, 2026, regardless of driving miles to the nearest medium or large hub airport; and

(iii)    of less than $650 during the most recent fiscal year for locations that are less than 175 miles from the nearest large or medium hub airport; and

(D)    is a community that, at any time during the period between September 30, 2010, and September 30, 2011, inclusive—

(i)    received essential air service for which compensation was provided to an air carrier under this subchapter; or

(ii)    received a 90-day notice of intent to terminate essential air service and the Secretary required the air carrier to continue to provide such service to the community.

(2)    ''enhanced essential air service'' means scheduled air transportation to an eligible place of a higher level or quality than basic essential air service described in section 41732 of this title.

(b)    LIMITATION ON AUTHORITY TO DECIDE A PLACE NOT AN ELIGIBLE PLACE.—  The Secretary may not decide that a place described in subsection (a)(1) of this section is not an eligible place on any basis that is not specifically stated in this subchapter.

(c)    EXCEPTION FOR LOCATIONS IN ALASKA AND HAWAII.— Subparagraphs (B), (C), and (D) of subsection (a)(1) shall not apply with respect to locations in the State of Alaska or the State of Hawaii.

(d)    EXCEPTIONS FOR LOCATIONS MORE THAN 175 DRIVING MILES FROM THE NEAREST LARGE OR MEDIUM HUB AIRPORT.—
Subsection (a)(1)(B) shall not apply with respect to locations that are more than 175 driving miles from the nearest large or medium hub airport.

(e)    WAIVERS.—

(1)    In General. —

The Secretary may waive, on an annual basis, subsections (a)(1)(B) and (a)(1)(C)(iii) with respect to an eligible place if such place demonstrates to the Secretary's satisfaction that the reason the eligibility requirements of such subsections are not met is due to a temporary decline in demand.

(2)    Limitation.—Beginning with fiscal year 2027, the Secretary may not provide a waiver of subsection (a)(1)(B) to any location—

(A)    in more than 2 consecutive fiscal years; or

(B)    in more than 5 fiscal years within 25 consecutive years.

(3)    Limitation.—Beginning in fiscal year 2027, the Secretary may not provide a waiver of subsection (a)(1)(C)(iii) to any location—

(A)    in more than 2 consecutive fiscal years; or

(B) in more than 5 fiscal years within 25 consecutive years.

(f)    DEFINITION.— For purposes of subsection (a)(1)(B), the term ''enplanements'' means the number of passengers enplaning, at an eligible place, on flights operated by the subsidized essential air service carrier.

## 49 U.S.C. § 41732:

Basic essential air service

(a)    General.--Basic essential air service provided under section 41733 of this title is scheduled air transportation of passengers and cargo--

(1)    to a medium or large hub airport less than 650 miles from an eligible place (unless such airport or eligible place are located in a noncontiguous State); or

(2)    to a small hub or nonhub airport, when in Alaska or when the nearest medium or large hub airport is more than 400 miles from an eligible place.

(b)    Minimum requirements.--Basic essential air service shall include at least the following:

(1)(A) for a place not in Alaska, 2 daily round trips 6 days a week, with not more than one intermediate stop on each flight; or

(B)    for a place in Alaska, a level of service at least equal to that provided in 1976 or 2 round trips a week, whichever is greater, except that the Secretary of Transportation and the appropriate State authority of Alaska may agree to a different level of service after consulting with the affected community.

(2)    flights at reasonable times considering the needs of passengers with connecting flights at the airport and at prices that are not excessive compared to the generally prevailing prices of other air carriers for like service between similar places.

(3)    service provided in aircraft with at least 2 engines and using 2 pilots, unless scheduled air transportation has not been provided to the place in aircraft with at least 2 engines and using 2 pilots for at least 60 consecutive operating days at any time since October 31, 1978.

(c)    Waivers.—Notwithstanding section 41733(e), upon request by an eligible place, the Secretary may waive, in whole or in part, subsections (a) and (b) of this section or subsections (a) through (c) of section 41734. A waiver issued under this subsection shall remain in effect for a limited period of time, as determined by the Secretary.

## 49 U.S.C. § 41733(c):

Availability of compensation.--(1) If the Secretary decides that basic essential air service will not be provided to an eligible place without compensation, the Secretary shall provide notice that an air carrier may apply to provide basic essential air service to the place for compensation under this section. In selecting an applicant, the Secretary shall consider, among other factors--

(A)    the demonstrated reliability of the applicant in providing scheduled air service;

(B)    the contractual, marketing, code-share, or interline arrangements the applicant has made with a larger air carrier serving the hub airport;

(C)     the preferences of the actual and potential users of air transportation at the eligible place, including the views of the elected officials representing the users;

(D)     whether the air carrier has included a plan in its proposal to market its services to the community;

(E)     for an eligible place in Alaska, the experience of the applicant in providing, in Alaska, scheduled air service, or significant patterns of non-scheduled air service under an exemption granted under section 40109(a) and (c)-(h) of this title; and

(F)     the total compensation proposed by the air carrier for providing scheduled air service under this section.

(2) Under guidelines prescribed under section 41737(a) of this title, the Secretary shall pay the rate of compensation for providing basic essential air service under this section and section 41734 of this title.

## **49 U.S.C. § 46110:**

(a)     Filing and venue.--Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title, a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (1) or (r) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

(b)     Judicial procedures.--When a petition is filed under subsection (a) of this section, the clerk of the court immediately shall send a copy of the petition to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, as appropriate. The Secretary, Administrator of the Transportation Security Administration, or Administrator of the

Federal Aviation Administration shall file with the court a record of any proceeding in which the order was issued, as provided in section 2112 of title 28.

(c)    Authority of court.--When the petition is sent to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration to conduct further proceedings. After reasonable notice to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists. Findings of fact by the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, if supported by substantial evidence, are conclusive.

(d)    Requirement for prior objection.--In reviewing an order under this section, the court may consider an objection to an order of the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration only if the objection was made in the proceeding conducted by the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration or if there was a reasonable ground for not making the objection in the proceeding.

(e) Supreme Court review.--A decision by a court under this section may be reviewed only by the Supreme Court under section 1254 of title 28.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2025, I caused a true and correct copy of the foregoing Opening Brief of Petitioner to be served on all counsel of record who have entered an appearance and are able to download pleadings from the CM/ECF system by filing this document with the Court through the CM/ECF system.

<u>/s/ Roy Goldberg</u>
Roy Goldberg

CLARKHILL\M8682\499851\281027115